# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1668

SANDRA K. HUPP, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 11, 2006,                               Decided   July 18, 2007  )

*Sandra W. Wischow,* of Richmond, Virginia, for the appellant.

*Rebecca A. Baird*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *William L. Puchnick*, Acting Deputy Assistant General Counsel; and *Lauren Ritter* (Law Clerk), were on the brief, all of Washington, D.C., for the appellee.

Before GREENE, *Chief Judge*, and HAGEL and SCHOELEN, *Judges*.

GREENE, *Chief Judge*, filed the opinion of the Court.  SCHOELEN, *Judge*, filed an opinion concurring in part and dissenting in part.

GREENE, *Chief Judge*: Sandra K. Hupp appeals, through counsel, a July 14, 2003, Board of Veterans' Appeals (Board) decision that denied her claims for accrued benefits under 38 U.S.C. § 5121 and service connection for the cause of her veteran-husband's death for the purpose of 38 U.S.C. § 1310 dependency and indemnity compensation (DIC) benefits.  Record (R.) at 1-14. Mrs. Hupp argues that (1) the Board failed to provide an adequate statement of reasons or bases for its rejection of favorable medical evidence; (2) VA failed to provide 38 U.S.C. § 5103(a)-compliant notice; (3) the Secretary breached his 38 U.S.C. § 5103A duty to assist by failing to obtain relevant service medical records (SMRs); and (4) the Board erred by failing to notify her, in accordance with 38 C.F.R. § 20.903(b) (2007), of its intention to consider evidence not previously considered and to allow her time to respond.  Appellant's (App.) Brief (Br.) at 8-17.  The Secretary argues that there is a plausible basis in the record for the Board's denial of service connection and that its

determination was supported by an adequate statement of reasons or bases. Secretary's (Sec'y) Br. at 7-12. He also asserts that a VA regional office (RO) provided Mrs. Hupp section 5103(a)-complying notice or, alternatively, that Mrs. Hupp has failed to demonstrate that she was prejudiced as a result of any notice deficiency. *Id*. at 12-16. Additionally, he contends that the Board did not err under § 20.903 because it did not "rely" on any additional evidence or law not previously considered by the RO. *Id*. at 16-17. Both parties filed supplemental memoranda of law in light of this Court's decision in *Mayfield v. Nicholson*, 19 Vet.App. 103 (2005) (*Mayfield I*), *rev'd on other grounds*, 444 F.3d 1328 (Fed. Cir. 2006) (*Mayfield II*). For the reasons set forth below, the July 2003 decision of the Board will be affirmed in part, and vacated in part, and certain matters remanded for readjudication.

## I. BACKGROUND

The veteran, Billy C. Hupp, served honorably on active duty in the U.S. Army from November 1965 to October 1966 and from June 1969 to November 1971, including service in Vietnam. R. at 18, 20. In January 1993, a VA physician opined that Mr. Hupp had chronic myelogenous leukemia (CML). R. at 108. In February 1993, Mr. Hupp filed an application for VA disability benefits for "residuals of exposure to Agent Orange" (R. at 99-102), and the RO requested Mr. Hupp's SMRs from November 1965 to November 1971 (R. at 104). In August 1993, the RO awarded a non-service-connected pension, but denied VA service connection for leukemia on both direct and presumptive bases. The RO found that Mr. Hupp's CML was not diagnosed until 21 years after discharge from service and his SMRs were negative for any symptoms, complaints, or treatments related to CML. R. at 125. The RO also deferred a decision on service connection for CML as secondary to Agent Orange exposure. *Id*. In August 1994, the RO denied service connection for CML as secondary to Agent Orange exposure because leukemia was not one of the conditions creating presumptive service connection due to Agent Orange exposure. R. at 133. Mr. Hupp filed a Notice of Disagreement (NOD) that reiterated his belief that his CML had been caused by "exposure to chemical products such as those used in Agent Orange." R. at 136.

In May 1995, a VA physician stated that Mr. Hupp had been regularly examined at the John J. Pershing VA Medical Center in Poplar Bluff, Missouri, since February 1993 and opined that "because of the quantity, consistency[,] and duration of exposure to [A]gent [O]range . . . there is

2

relations [sic] between the exposure and [Mr. Hupp's] diagnosis of [CML]." R. at 151. In September 1996, the Board denied service connection for CML. R. at 362-69. The Board determined that "the absence of objective medical evidence demonstrating a causal connection between the veteran's [CML] and his exposure to chemicals far outweighs the speculations made by [Mr. Hupp] and the VA physician." R. at 368. Mr. Hupp appealed, and in June 1997 the Court granted the parties' joint motion for remand. R. at 373-77. On March 4, 1998, the Board remanded the matter to the RO for further development and readjudication. R. at 381-87. The RO was instructed to refer Mr. Hupp's claims folder to a physician specializing in hematology and, if possible, Agent Orange-related disease, for an opinion "as to the relationship, if any, between [Mr. Hupp's] military service in general, and in particular his exposure to herbicide agents while serving in Vietnam, and his diagnosed [CML]." R. at 385-86.

Mr. Hupp died in April 1999, before the RO decided that matter on remand. R. at 439. His death certificate listed his cause of death as intracranial hemorrhage due to or as a consequence of CML. *Id.* No other conditions were listed as contributing to his death, nor was an autopsy performed on the veteran. *Id.* In June 1999, Mrs. Hupp, the veteran's spouse claimed DIC and accrued benefits. R. at 441-42, 450-53. Her application stated: "My husband had a service[-]connected disability claim on appeal at the [Board] when he died. I believe his cause of death was service connected since he was trying to service connect for that cause." R. at 453. Regarding her claim for accrued benefits, Mrs. Hupp's application stated: "[P]lease see attached 21-4138 for explanation" (R. at 453); that form referred to a VA letter to Mr. Hupp regarding his reported unreimbursed medical expenses (R. at 445-48). In November 1999, the RO denied, inter alia, Mrs. Hupp's claims for service connection for the cause of her husband's death and for accrued benefits. R. at 457-59. Mrs. Hupp appealed and requested that since service connection for her husband's death was still at issue, before sending her appeal to the Board, the RO should "comply with the directions of the [Board r]emand dated March 4, 1998." R. at 474.

In January 2000, VA physician Dr. Matthew McCall reviewed the veteran's medical files and opined that "(1) it is not likely that the veteran's leukemia was caused by [A]gent [O]range and (2) it is not likely that the veteran's leukemia was evident during his years of service." R. at 479. In March 2000, another VA physician reviewed Mr. Hupp's SMRs and stated:

> It is impossible to say definitely that [Mr. Hupp's] leukemia was secondary to dioxin exposure. The increase of myloid leukemia in people exposed to dioxin may be increased (Leukemia 1999, April 12 Supplement § 72-74) – However, due to the rarity of the disease [and] inability to confirm finding in animal model, it is not possible to give conclusive answer.

R. at 481. In July 2000, Dr. McCall reviewed the March 2000 VA physician's report and the article cited therein and stated:

> This was an abstract article that viewed several studies. These studies were similarly reviewed by the National Academy of Science and because of inconsistencies and the limited sample size of the studies, they are <u>not felt</u> to represent a causal relationship between leukemia and [A]gent [O]range.

R. at 485. Dr. McCall then reiterated his medical opinion that Mr. Hupp's medical records and the scientific literature did not demonstrate a causal relationship between Mr. Hupp's leukemia and Agent Orange. *Id*.

In March 2003, the Board remanded the matters to the RO for further development and readjudication in light of the enactment of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096, codified in part at 38 U.S.C. §§ 5102, 5103, and 5103A. R. at 507-12. On April 1, 2003, the RO sent to Mrs. Hupp a letter notifying her of the enactment of the VCAA. R. at 514-16. There is no indication in the record that Mrs. Hupp or her counsel responded to that letter. *See* R. at 1-528. In May 2003, the RO issued a Supplemental Statement of the Case (SSOC) informing her that her service-connection and accrued benefits claims remained denied. R. at 518-21.

In its July 14, 2003, decision, the Board denied Mrs. Hupp's claim for service connection for the cause of the veteran's death. R. at 1-15. When reviewing the claim, the Board concluded that the section 5103(a)/5103A notice and duty-to-assist requirements had been satisfied. R. at 4. The Board found that "[b]y letter dated in April 2003, the RO apprised the appellant of the pertinent provisions of the VCAA and of that evidence she needed to submit and the development the VA would undertake." R. at 4. Mrs. Hupp appealed to this Court.

4

## II. LAW and ANALYSIS

### A. Standard of Review

A Board determination of whether or not the section 5103(a) statutory notice requirements have been complied with is "a substantially factual determination." *Mayfield II,* 444 F.3d at 1335. Thus, the Court reviews whether that determination was clearly erroneous. *See Mayfield II, supra*; *see also Prickett v. Nicholson*, 20 Vet.App. 370, 378 (2006), *appeal docketed*, No. 07-7057 (Fed. Cir. Nov. 27, 2006). A finding of material fact is clearly erroneous when, after reviewing the entire evidence, the Court "'is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). When applying this standard, "'if the [Board's] account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Gilbert, supra* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)). If the Court determines that a notice error has been committed, the Court must take due account of the rule of prejudicial error. *See Conway v. Principi*, 353 F.3d 1369, 1374-75 (Fed. Cir. 2004). In the context of a section 5103(a) notice error, such error is "presumed prejudicial, requiring reversal unless the VA can show that the error did not affect the essential fairness of the adjudication." *Sanders v. Nicholson*, 487 F.3d 881, __, No. 06-7001, slip op. at 21 (Fed. Cir. May 16, 2007).

### B. Compliance with Section 5103(a) Notice

Section 5103(a) of title 38, U.S. Code, requires the Secretary to inform a claimant of any information and evidence not of record (1) that is necessary to substantiate the claim, (2) that the Secretary will seek to obtain, if any, and (3) that the claimant is expected to provide, if any. *See* 38 U.S.C. § 5103(a); *see Quartuccio v. Principi*, 16 Vet.App. 183, 187 (2002). Further, 38 C.F.R. § 3.159(b)(1) imposes a fourth notice element requiring VA to "request that the claimant provide any evidence in the claimant's possession that pertains to the claim." 38 C.F.R. § 3.159(b)(1) (2007); *see Pelegrini v. Principi*, 18 Vet.App. 112, 121 (2004). "The purpose of [section 5103(a)] and [§ 3.159(b)] is to require that the VA provide affirmative notification to the claimant prior to the initial decision in the case as to the evidence that is needed and who shall be responsible for providing it." *Mayfield II*, 444 F.3d at 1333. The notification required under statutory section

5103(a) "is not satisfied by various post-decisional communications from which a claimant might have been able to infer what evidence the VA found lacking in the claimant's presentation." *Id*. Untimely notice can be cured by a Board remand followed by proper notification and readjudication of the underlying claim. *See Prickett*, 20 Vet.App. at 376.

In this case, we address VA's section 5103(a) notice obligation in the context of a section 1310 DIC claim. Pursuant to section 1310, DIC is paid to a surviving spouse of a qualifying veteran who died from a service-connected disability. *See Dyment v. West*, 13 Vet.App. 141 (1999) *aff'd sub nom., Dyment v. Principi*, 287 F.3d 1377 (Fed. Cir. 2002); *Hanna v. Brown*, 6 Vet.App. 507, 510 (1994). A veteran's death will be considered service connected where a service-connected disability was either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a) (2007). A service-connected disability is the principal cause of death when that disability, "singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto." 38 C.F.R. § 3.312(b). To be a contributory cause of death, the disability must have "contributed substantially or materially" to death, "combined to cause death," or "aided or lent assistance to the production of death." 38 C.F.R. § 3.312(c). Establishing service connection for a disability generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. *See Hickson v. West*, 12 Vet.App. 247, 253 (1999); *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *see also Heuer v. Brown*, 7 Vet.App. 379, 384 (1995). For a section 1310 DIC claim, the first *Caluza* requirement, "evidence of a current disability, will always have been met (the current disability being the condition that caused the veteran to die)." *Carbino v. Gober*, 10 Vet.App. 507, 509 (1997), *aff'd sub nom. Carbino v. West*, 168 F.3d 32 (Fed. Cir. 1999).

Here, the Board determined that "[b]y letter dated in April 2003, the RO apprised the appellant of the pertinent provisions of the VCAA and of that evidence she needed to submit and the development VA would undertake." R. at 4. Neither party disputes that, at the time of the April 2003 letter, Mrs. Hupp had submitted evidence relevant to each element necessary to substantiate her DIC claim. Rather, Mrs. Hupp argues that the April 2003 VCAA letter did not comply with the provisions of section 5103(a) because it "failed to inform [her] of why this evidence

6

was not considered sufficient to grant service connection." Appellant's (App.). Supplemental (Suppl.) Memorandum (Mem.) at 6. She asserts that "[i]f additional evidence was necessary to substantiate the [v]eteran's claims or if the existing evidence was somehow insufficient, VA should have stated this." App. Brief (Br.) at 12. The Secretary counters that the purpose of section 5103(a) notice is not to provide a claimant with "an analysis of the credibility and probative value of each item of evidence [that VA] had received." Secretary's (Sec'y) Suppl. Mem. at 4.

At oral argument, the Secretary advanced for the first time his position that when a claimant has submitted evidence relating to each element of his or her claim, the Secretary is under no obligation to provide section 5103(a) notice because the claim has already been substantiated. In support of this argument, the Secretary cites to this Court's holding in *Dingess v. Nicholson*, 19 Vet.App. 473, 491 (2006), *aff'd sub nom. Hartman v. Nicholson*, 483 F.3d 1311 (Fed. Cir. 2007). The Court has repeatedly discouraged parties from "[a]dvancing different arguments at successive stages of the appellate process." *Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990) ("Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raises the undesirable specter of piecemeal litigation."); *see Tubianosa v. Derwinski*, 3 Vet.App. 181, 184 (1992) (appellant "should have developed and presented all of his arguments in his initial pleading"). Although *Dingess, supra*, was issued after briefing was complete in this case, the Secretary should have notified the Court of his intention to rely on that case to advance a new argument. *See* U.S. VET. APP. R. 30(b) ("When pertinent and significant authority comes to the attention of a party after the party's brief has been filed . . ., a party must promptly advise the Clerk, by letter, with a copy to all other parties, setting forth the citation(s)."). As such, the Court may in its discretion decline to address the Secretary's argument raised at oral argument. *See Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000) (with regard to claim properly before it, Court is not compelled to hear legal issues raised in the first instance on appeal).

However, because the Secretary's reliance on *Dingess* constitutes a misinterpretation of the Court's caselaw, we will address it. *See Id.* at 1377-78 (holding that Court has discretion to hear legal arguments raised for the first time on appeal). Relying on *Dingess*, at oral argument the Secretary argued that section 5103(a) notice was not necessary in this case because Mrs. Hupp's claim had been substantiated prior to VA's issuance of the April 2003 notice letter–that is, some

7

prima facie evidence on each element of her DIC claim had been submitted. The purpose of section 5103(a) notice is to "ensure that the claimant's case is presented to the initial decisionmaker with whatever support is available, and to ensure that the claimant understands what evidence will be obtained by . . . VA and what evidence must be provided by the claimant." *Mayfield II,* 444 F.3d at 1333. In cases where the VCAA was enacted after the RO rendered an initial decision on a claim for benefits, the timing error is cured by a remand "for a new VCAA notification followed by readjudication of . . . [the] claim." *Id.* at 1334; *Prickett, supra.* In *Dingess*, the Court determined that, although VA had not made a final decision on the claim at the time of the VCAA's enactment, the Board was not required to remand the matter to the RO for VCAA notification because the initial benefit sought had already been awarded. *Dingess*, 19 Vet.App. at 493, 500. The Court stated that, "[i]n cases where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service-connection claim has been more than substantiated–it has been proven." *Id.* at 491. In other words, if a claimant receives a favorable determination on the benefit initially sought, but files an NOD as to the disability rating or effective date assigned to that award, VA is not obligated to provide a claimant with another VCAA-notice letter before proceeding with the appeal. *See id.* However, where no decision or an unfavorable decision as to service connection for the benefit sought is rendered prior to the VCAA's enactment, and the claim was pending at the time of the VCAA's enactment, VA is generally obligated to provide a claimant with section 5103(a)-complying notice and the RO must then readjudicate the matter.

Here, Mrs. Hupp had not received a favorable decision on her claim at the time of the VCAA's enactment. Thus, *Dingess* is clearly distinguishable from the present matter. Contrary to the Secretary's contention, nothing in the language of statutory section 5103(a), regulation § 3.159(b)(1), or this Court's decision in *Dingess, supra*, suggests that VA is relieved of its obligation to provide section 5103(a) notice merely because it had in its possession at the time of the VCAA's enactment some evidence relevant to each element of Mrs. Hupp's claim.

Mrs. Hupp contends that VA is required to inform a claimant of how the evidence in the file at the time a claim for benefits is made is insufficient. In doing so, she, in essence, argues that before providing VCAA notice, VA is required to conduct a preadjudicatory analysis of the evidence in its possession, prior to issuance of VCAA notification and to then tailor the notice accordingly. This same argument was rejected in *Locklear v. Nicholson*, 20 Vet.App. 410, 415-16 (2006). In

8

*Locklear*, the Court observed that "it would be senseless to construe [section 5103(a)] as imposing upon the Secretary a legal obligation to rule on the probative value of information and evidence presented in connection with a claim prior to rendering a decision on the merits of the claim itself." *Id.* at 416. The Court noted, however, that the "not previously provided" language of section 5103(a) "indicates that some cognitive review of the claim must be made prior to providing the notice and that a generalized or boilerplate notice letter might not suffice in some cases." *Id.* (citing *Kent v. Nicholson*, 20 Vet.App. 1, 10 (2006)). Accordingly, we must address whether, in this case, VA was required to provide to Mrs. Hupp something more than a general notice letter.

In *Dingess*, it was held:

> If the claimant's application suggests there is specific information or evidence necessary to resolve an issue relating to elements of a claim, VA must consider that when providing notice and tailor the notice to inform the claimant of the evidence and information required to substantiate the elements of the claim reasonably raised by the application's wording.

*Dingess,* 19 Vet.App. at 488-89. However, the Court did not elaborate on what the tailoring of notice entails.

But, as explained in *Dingess*, when examining the legislative background of the statute, in the process of enacting section 5103(a), the House of Representatives and Senate Committees on Veterans' Affairs stated that "to substantiate" is intended to mean "'tending to prove' or 'to support.'" 146 CONG. REC. H9912-15 (Oct. 17, 2000) (statement of the H.R. and S. Comms. on Veterans' Affairs). It does not mean "to prove." Indeed, the "[i]nformation or evidence necessary to substantiate a claim need not prove a claim–although it eventually may do so when a decision on a claim is made–but it needs to support a claim or give form and substance to a claim." 146 CONG. REC. H9912-15 (Oct. 17, 2000) (statement of the H.R. and S. Comms. on Veterans' Affairs); *see Dingess*, 19 Vet.App. at 491. In promulgating section 5103(a)'s implementing regulation, 38 C.F.R. § 3.159, VA considered whether section 5103(a) notice should contain a statement regarding the sufficiency of evidence in its possession and stated:

> We received a comment stating that the regulation should require VA, at the point in time when any evidence has been received in a claim for compensation benefits, to determine whether that evidence satisfies a necessary element of the claim and so advise the claimant. We decline to revise the regulation to accommodate this suggestion; such a regulatory requirement would necessitate multiple reviews of a single claim and is administratively unworkable. . . . The intent of Congress, as

9

indicated in the plain language of the VCAA and in the legislative history, is that VA advise a claimant as to the evidence and information necessary to substantiate a claim once VA receives a substantially complete application. There is no indication that Congress intended that VA review each claim and advise the claimant every time any evidence relevant to it is received.

66 Fed. Reg. 45,620, 45,622; *see Dingess*, 19 Vet.App. at 487. Further, the statutory and regulatory scheme provides for other notification and explanation to claimants of the RO's evaluation of the evidence. *See* 38 U.S.C. §§ 5104(a)*,* 7105(d)(1); *Dingess*, 19 Vet.App. at 490; 38 C.F.R. § 3.103(b) (2007). Under statutory sections 5103A and 7105(d) and regulation § 3.103(b), after a claimant has filed an NOD, VA is obligated to take appropriate additional development and review action and, if the disagreement continues, to inform the claimant of how he or she can be awarded the benefit sought based on the evidence and the law. Thus, we hold that there is no preliminary obligation on the part of VA to perform, what in essence would be, a predecisional adjudication of a claim prior to providing to the claimant section 5103(a) notice.

Although section 5103(a) does not require a "predecisional adjudication" of the evidence in each case, the notice must be responsive to the particular application submitted. *See Kent*, 20 Vet.App. at 9 ("The legislative interest underlying the VCAA notice requirement is the intent of Congress to provide claimants a meaningful opportunity to participate in the adjudication of claims"). This means that there is a middle ground between a predicisional adjudication and boilerplate notice with regard to the amount of detail and degree of specificity VA must provide for section 5103(a)-compliant notice.

In *Kent*, the Court held that, in the context of a claim to reopen, VA is required to "look at the bases for the denial in the prior decision and to respond with a notice letter that describes what evidence would be necessary to substantiate th[e] element or elements required to establish service connection that were found insufficient in the previous denial." *Kent,* 20 Vet.App. at 10. *Kent* requires VA to look beyond the four corners of a claimant's application, and provide notice identifying the reasons for the prior denial and the evidence missing that prevented VA from awarding the benefit sought. *See id*. Because a deceased veteran could have made a claim for service connection during his or her life, a claim for section 1310 DIC benefits may be analogous to a claim to reopen a previously and finally disallowed claim. Indeed, VA must perform a different analysis where the deceased veteran was service connected during his or her lifetime than when the

10

veteran was not. *See* 38 U.S.C. §§ 1310, 1318; 38 C.F.R. § 3.312(a), (b), (c)). In the former situation, the DIC claimant must establish that the service-connected disability was either the principal or contributory cause of death. 38 C.F.R. § 3.312(a). However, where service connection has not been previously established, the DIC claimant must first establish service connection for the cause of the veteran's death.

Therefore, in the latter case, a DIC claim is an *original claim* for benefits that is independent of any underlying service-connection claim lodged by a veteran or pending at the time of the veteran's death. *See* 38 U.S.C. § 1310(a). Consequently, VA adjudicates a DIC claim without regard to any prior negative disposition of issues during a veteran's lifetime, *see Stoll v. Nicholson*, 401 F.3d 1375, 1380 (Fed. Cir. 2005); 38 C.F.R. § 20.1106 (2007), and decides that claim disregarding any prior determination on the credibility or probative value of any evidence submitted in connection with a veteran's previously denied or pending service-connection claim. Although we recognize that the notice obligation occurs during the nonadversarial adjudication process, we also observe that 5103(a) notice is but one link in a chain of assistance that VA must provide claimants, *see Dingess*, 19 Vet.App. at 490.

Accordingly, because the RO's adjudication of a DIC claim hinges first on whether a veteran was service-connected for any condition during his or her lifetime, we hold that in the context of a claim for DIC benefits, section 5103(a) notice must include (1) a statement of the conditions, if any, for which a veteran was service connected at the time of his or death; (2) an explanation of the evidence and information required to substantiate a DIC claim based on a previously service-connected condition; and (3) an explanation of the evidence and information required to substantiate a DIC claim based on a condition not yet service connected. We further hold that, unlike a claim to reopen, an original DIC claim imposes upon VA no obligation to inform a DIC claimant who submits a *nondetailed* application of the specific reasons why any claim made during the deceased veteran's lifetime was not granted. Nevertheless, we realize that although independent, the DIC claim and the underlying deceased spouse's claim for benefits are inextricably related. Consequently the information contained in the deceased spouse's claims file will undoubtedly be considered by VA in the adjudication of the DIC claim. Therefore, although not required, a recitation of this evidence in a form similar to that discussed in *Locklear* would be helpful and would

11

prevent unnecessary effort on the part of the surviving spouse in locating and providing documents already in possession of VA. *See Locklear*, 20 Vet.App. at 414-15.

In *Dingess*, we held that where a claimant submits a detailed application for benefits, VA must provide a detailed response. *See Dingess*, 19 Vet.App. at 488-89. For example, if when seeking a particular benefit or disability rating, the claimant asserts that he or she is entitled to a specific effective date, or states that he or she has been unemployed since a certain date, as part of its notice on the effective-date element of a claim, VA should state that generally the effective date of an award of benefits shall not be earlier than the date of the claim, *see* 38 U.S.C. § 5110(a), but that an earlier effective date may be established by showing that the claimant had previously filed an informal claim for benefits. *See Dingess, supra*. Or, if the claimant applies for benefits and attaches to his or her application evidence in support of that claim, VA must take account of that evidence, which requires at the very least, acknowledging its receipt. *See Locklear* 20 Vet.App. at 415. *Locklear*'s "cognitive review," however, does not require VA to assess the weight, sufficiency, credibility, or probative value of any assertion made in the claimant's application or any evidence submitted in connection with that claim. Rather, a tailored letter is something between a boilerplate notice and an adjudication of the evidence, meaning that the more detailed the claim, the more detailed, in terms of relevant law and regulations and lay and medical evidence, the notice must be. Simply stated, because section 5103(a) notice purports to give the claimant a fair opportunity to participate in developing evidence in support of the claim, that notice must respond to the particulars of the application submitted. It follows therefore that when a claimant's DIC application and accompanying evidence expressly raises a specific issue regarding, or the evidence submitted in connection with it relates to, a particular element of a claim, VA is required to provide notice that (1) informs the claimant of how to substantiate the assertion advanced and (2) takes into account the evidence submitted in connection with the application.

Turning to Mrs. Hupp's case, her DIC claim stated: "I request DIC benefits. My husband had a service connected disability claim on appeal at the [Board] when he died. I believe [that] his cause of death was service connected since he was trying to service connect for that cause." R. at 453. Attached to her application was a form referring to a VA letter to Mr. Hupp regarding his reported unreimbursed medical expenses. R. at 445-48. In her application, she made no statement nor presented any evidence requiring VA to provide more than general notice of how to substantiate her

12

DIC claim. Indeed, the documents presented with her application are not related to her section 1310 DIC claim; they pertain only to her accrued benefits claim. R. at 445-48. Further, in her DIC application Mrs. Hupp asserted that Mr. Hupp was not service-connected at the time of his death; thus, VA had no duty to provide more specific notice. In the April 2003 notice letter, the RO stated that "[t]o establish that a veteran's death is service-connected, the evidence must show . . . [the] cause of death[,] . . . [a]n injury, diesease[,] or other event in service[, and] . . . [a] relationship between the cause of death and the injury, disease, or other event in service." R. at 514. The letter advised that if Mrs. Hupp had not already submitted a death certificate, she should do so, and informed her that VA would obtain Mr. Hupp's SMRs and other military service records and would review the evidence contained in his claims file. The RO also informed her that she could submit a nexus medical opinion from her own doctor and asked that Mrs. Hupp identify "any additional information or evidence" that she wanted the RO to obtain. R. at 514-15.

Mrs. Hupp argues that the April 2003 letter failed to comply with the section 5103(a) notice requirements because "[e]vidence on every point had been submitted, and the April 2003 letter . . . failed to inform [her] of why this evidence was not considered sufficient to grant service connection." App. Suppl. Mem. at 6. As stated above, VA is not obligated to rule on the probative value of information and evidence presented at the time that it provides the claimant VCAA notification. *See Locklear, supra*; *Dingess*, 19 Vet.App. at 491 (stating that a claim may be substantiated but not proven). To the extent that she argues that in the April 2003 letter VA was required to inform her that it had already discounted the 1995 medical opinion in connection with either her husband's service-connection claim or her own DIC claim, that argument is without merit. In section 5103(a) preadjudication notice, the Secretary or VA is not required to inform a DIC claimant of the reasons for any previous denial of a veteran's service-connection claim. A DIC claim is an original claim for benefits independent of any claim the veteran may have made during his lifetime. *See Stoll, supra*. Indeed, to provide the type of notice she argues for might have discouraged her from submitting additional evidence, which is contrary to the fundamental purpose of VCAA notification. *See Overton v. Nicholson*, 20 Vet.App. 427, 435 (2006) (stating that "section 5103(a) assumes a fundamental role in . . . affording a claimant a meaningful opportunity to participate effectively in the processing of his or her claim").

13

Furthermore, in March 2003 the Board remanded Mrs. Hupp's DIC claim to the RO for readjudication. R. at 507-12. A readjudication requires a reevaluation of the evidence. Thus, because it was possible that upon readjudication VA could have reassessed the probative value of the 1995 medical opinion, any notice informing Mrs. Hupp that that opinion would be discounted would be misleading. Indeed, if she submitted evidence that corroborated the 1995 physician's opinion, that additional evidence could bring new significance to the sum total of evidence by adding weight to, thereby confirming the validity of previously rejected medical evidence. *Cf. Molloy v. Brown*, 9 Vet.App. 513, (1996); *Paller v. Principi*, 3 Vet.App. 535 (1992).

As to her argument that "[n]owhere does the April 2003 letter inform [her] of what information, not previously provided, was necessary to substantiate her claim," nothing in Mrs. Hupp's *application* for benefits suggests that VA should have provided her with more tailored notice. App. Br. at 12; *see* R. at 453. As observed in *Dingess*, a claim can be substantiated without being ultimately proven because substantiation requires only evidence "tending to prove" a claim. *Dingess*, 19 Vet.App. at 491. It is not until the adjudicator weighs and evaluates that evidence, that a decision on the claim is made. Thus, even if VA took into account the evidence in the claims file at the time of its April 2003 letter, VA would only be required to inform her that it had in its possession evidence relevant to each element of her claim. As stated above, a more detailed notice potentially discourages a claimant from submitting additional or corroborative notice, and is contrary to the VCAA's purpose. *See Overton, supra.* Thus, because Mrs. Hupp or her counsel failed to submit any evidence with her DIC application, VA was not required to include in its section 5103(a) notice an account of potentially relevant evidence residing already in her claims file.

Accordingly, after reviewing the record in its entirety, including Mrs. Hupp's DIC application, we conclude that the Board's finding that the April 2003 notice letter provided Mrs. Hupp with adequate notice of the evidence or information necessary to substantiate her DIC claim was not clearly erroneous.

### C. Reasons or Bases

Before deciding a claim, the Board is required to consider all relevant evidence of record and to consider and discuss in its decision all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order). In addition, the Board must include in its decision

a written statement of the reasons or bases for its findings and conclusions, adequate to enable an appellant to understand the precise basis for the Board's decision as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 56-57. To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza*, 7 Vet.App. at 506; *Gilbert*, 1 Vet.App. at 57. Provided that the Board offers an adequate statement of reasons or bases, the Board may favor one medical opinion over another. *See Owens v. Brown*, 7 Vet.App. 429, 433 (1995). Although the Board is not free to ignore the opinion of a treating physician, it is free to discount the credibility of that physician's statement. *See Guerrieri v. Brown*, 4 Vet.App. 467, 471-73 (1993); *Sanden v. Derwinski*, 2 Vet. App. 97, 101 (1992). However, the Board cannot reject evidence favorable to the claimant without providing adequate reasons or bases for its decision. *See Meyer v. Brown*, 9 Vet.App. 425, 433 (1996). "The Board may not rely on its own unsubstantiated medical conclusions to reject expert medical evidence in the record; rather, the Board may reject a claimant's medical evidence only on the basis of other independent medical evidence." *Flash v. Brown*, 8 Vet. App. 332, 339 (1995).

In finding that the preponderance of the evidence was against a finding of service connection, the Board found Dr. McCall's July 2000 medical opinion highly probative because it was based on a review of Mr. Hupp's medical records and medical literature. However, the Board did not reject the May 1995 VA physician's opinion, despite the Board's acknowledgment that the 1995 opinion was evidence favorable to Mrs. Hupp. Rather, the Board focused on the fact that Mr. Hupp's SMRs are silent for complaints or findings suggestive of leukemia. R. at 13.

As noted above, the May 1995 VA physician opined that "because of the quantity, consistency[,] and duration of exposure to [A]gent [O]range . . . there is relations [sic] between the exposure and [Mr. Hupp's] diagnosis of [CML]." R. at 151. However, when relying on the July 2000 VA medical opinion, the Board failed to adequately discuss evidence in favor of Mrs. Hupp. *See Meyer, supra.* Although the Board is free to choose one medical opinion over another, the Board must provide an adequate statement of reasons or bases for that decision. *See Owens, supra.* Mrs. Hupp argues persuasively that, if the Board is going to find Dr. McCall's July 2000 opinion more probative, then the Board is required to provide an adequate statement of reasons or

15

bases to discount the May 1995 favorable medical nexus opinion. That statement must clearly explain why "a fair preponderance of the evidence is against the claim for service connection," *Gilbert, supra,* when no evidence has been cited specifically disproving the claimed nexus. Without such discussion, Mrs. Hupp cannot understand the precise basis for the Board's decision nor can we effectively review the Board's decision. *See Schafrath*, 1 Vet.App. at 593; *see also Allday* and *Gilbert,* both *supra*. Accordingly, the Board's decision denying service connection for the cause of Mr. Hupp's death will be vacated and the matter remanded for readjudication. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("[W]here the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy.").

### D. Accrued Benefits Claim

Regarding Mrs. Hupp's claim for accrued benefits, at oral argument counsel asserted that she had not abandoned this matter, but conceded that the distinction between the accrued benefits issue and the DIC claim was not adequately covered in the briefs and that her arguments to each were not clearly delineated. Indeed, she has failed to raise any specific argument as to how VA's notice to her was defective, and, thus, the Court will not address this matter. *See Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (it is appellant's obligation to "plead with some particularity the allegation of error so that the Court is able to review and assess the validity of the appellant's arguments"), *appeal docketed*, No. 06-7089 (Fed. Cir. Mar. 13, 2006).

### E. Other Arguments

Because we are vacating the Board's decision on the merits of Mrs. Hupp's DIC claim, the Court will not at this time address her other arguments on that claim. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order) ("A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course, before this Court in an appeal, should the Board rule against him."). On remand, she may present any additional evidence and argument in support of the matter remanded, and the Board must consider any evidence and argument so presented. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Board shall proceed expeditiously, in accordance with 38 U.S.C. §§ 5109B, 7112 (requiring Secretary to provide "expeditious treatment" of claims remanded by Court).

# III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, that part of the July 2003 Board decision that denied the appellant's claim for VA service connection for CML, to include CML based on Agent Orange exposure, for the purpose of DIC benefits is VACATED and the matter is REMANDED to the Board for further adjudication; the remainder of the Board decision is AFFIRMED.

SCHOELEN: *Judge*, concurring in part and dissenting in part: I agree that VA is not required to conduct a preadjudicatory analysis of the evidence in its possession prior to the issuance of VCAA notice. *See Locklear v. Nicholson*, 20 Vet.App. 410, 415-16 (2006). As the Court pointed out in *Locklear,* the VCAA does not impose a legal obligation on VA to rule on the probative value of information and evidence presented in connection with a claim prior to rendering a decision on the merits of the claim itself. *Id*. However, the appellant's argument that she did not receive adequate VCAA notice is not based solely on her contention that VA failed to assess the adequacy of the evidence that she submitted in support of her claim and tailor its notice to address the deficiencies in that evidence. Rather, in her brief, the appellant states: "[N]owhere does the April 2003 letter inform the Appellant of what information, not previously provided, was necessary to substantiate her claim. If additional evidence was necessary to substantiate her claims **or** if the existing evidence was somehow insufficient, VA should have stated this." App. Br. at 12 (emphasis added).

The quotation from the appellant's brief demonstrates that her VCAA argument is premised, in part, on her contention that the April 2003 letter did not comply with the VCAA because it did not notify her of any evidence or information that she had not submitted to VA that was still needed to submit to substantiate her claim. This aspect of her argument is not premised on a contention that VA was required to assess the weight, sufficiency, credibility, or probative value of any evidence submitted in connection with her claim and to notify her of any deficiencies in that evidence. Thus, I respectfully disagree with the majority's response to this aspect of the appellant's argument.

The majority takes the position that the appellant was not entitled to more than a general VCAA notice on how to substantiate her DIC claim because neither her application nor the documents attached to it triggered VA's duty to provide more than general notice. The majority

17

relies too heavily upon a literal reading of *Dingess v. Nicholson,* 19 Vet.App. 473 (2006)*,* while ignoring the plain language of section 5103(a). In *Dingess*, the Court made clear that section 5103(a) notice must respond to the particulars of the application for benefits. In this regard, the Court held that an application for benefits that is detailed and raises a specific issue may require VA to provide a detailed VCAA notice. *See Dingess* 19 Vet.App. at 488-89 (stating where a claimant submits a detailed application for benefits, VA must provide a detailed response). Accordingly, when the wording of a claimant's application or the evidence attached to it provides detailed information that suggests there is specific information or evidence necessary to resolve an issue relating to elements of a claim, VA must tailor the notice according to the application's wording. However, there is nothing in the plain language of the statute that suggests that VA's duty to provide tailored notice is triggered **solely** by the wording of the application and the evidence attached to it.

Section 5103(a) provides, in pertinent part, that "the Secretary shall notify the claimant . . . of any information, and any medical or lay evidence, **not previously provided to the Secretary** that is necessary to substantiate the claim." (emphasis added). A fundamental canon of statutory construction is that the words of a statute are given "their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431, (2000); *Smith v. United States*, 508 U.S. 223 (1993) (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979) (stating that "words [in a statute], unless otherwise defined, will be interpreted as taking their ordinary, contemporary, common meaning"). The word "previously" is defined as "occurring before in time or order; prior." WEBSTER'S NEW WORLD DICTIONARY 1068 ( 3d College ed. 1988). Here, the action that the statute refers to as occurring prior to the Secretary's act of providing VCAA notice is the claimant's submission of evidence or information to the Secretary. The statutory phrase "not previously provided to the Secretary" does not contain any language that indicates that it is limited solely to information or evidence that the claimant provided to the Secretary with his application. The majority's interpretation of section 5103(a) reads a limitation into the statute that does not exist. The majority does not discuss how the plain language of the statute supports such a construction.

Because the statutory language is broadly worded, it necessarily encompasses any information or evidence that a claimant has submitted in support of his claim prior to the date on

which the Secretary provides the claimant VCAA notice. This means that the cognitive review of the claim that VA must make before providing notice requires it to review the application, any evidence attached to it, and any other pertinent information or evidence that is in the record at the time that VA prepares the VCAA notice. It is from this review of the claim and the evidence in support of it that VA must determine whether a general notice is sufficient or whether a tailored notice is required. This interpretation is consistent with the plain meaning of the language and furthers Congress's underlying purpose in enacting the VCAA, that is, "to facilitate and maximize the collaborative process that is the cornerstone of the VA [nonadversarial] claims process." *Locklear*, 20 Vet.App. at 414.

The majority's view that VA looks only to the application and its attachments when it prepares the VCAA notice to a claimant is particularly troubling in a case such as this, where VA attempted to satisfy the VCAA's timing requirement that VCAA notification be made prior to the initial adjudication of the claim by issuing the April 2003 letter followed by a readjudication of the claim. *See Mayfield v. Nicholson,* 444 F.3d 1328, 1333-34 (Fed. Cir. 2006) (holding VA may cure VCAA notice timing defects by issuance of a fully compliant VCAA notice followed by readjudication of the claim); *Prickett v. Nicholson,* 20 Vet.App. 370, 376 (2006) (holding same). In such cases, the VCAA notice may be issued long after the claimant has submitted the application and VA has completed the initial adjudication of the claim. Indeed, the record may contain additional evidence or information in support of the claim. It makes no sense, in such cases, that when VA conducts a cognitive view of the claim, it would focus only on the claimant's application and the documents attached to it, and ignore additional pertinent information or evidence that exists in the record before it. Limiting the universe of documents to the application and its attachments from which VA conducts its cognitive view of the claim undermines the purpose of the VCAA notice, which is to provide the claimant with notice of the evidence that is still needed to substantiate the claim so that the claimant can meaningfully participate in the adjudication of his claim.

In this case, the record before VA at the time that it reviewed the information and evidence presented with the claim to provide the appropriate VCAA notice included the veteran's death certificate and Dr. Luker's medical opinion attributing the veteran's CML to Agent Orange exposure. However, the record did not contain any scientific or medical studies linking CML to Agent Orange exposure. Scientific or medical studies regarding a connection between the claimed disease and

19

exposure to Agent Orange are precisely the type of evidence that would be key to substantiating the elements of the appellant's DIC claim, particularly in this case where the veteran's CML was not one of the diseases for which presumptive service connection may be established. Thus, a cognitive view of the evidence submitted in connection with the appellant's claim would lead to the conclusion that the appellant provided VA with sufficiently detailed information to suggest there was specific information or evidence not previously submitted to VA that was necessary to resolve an issue relating to elements of the appellant's DIC claim. As such, VA could have tailored the VCAA notice to respond specifically to the claim before it without having to assess the weight, sufficiency, credibility, or probative value of any of the evidence that was submitted in connection with the appellant's DIC claim. VA could have easily provided the appellant notice that she could substantiate her claim by offering scientific or medical studies linking exposure to Agent Orange to CML. Because the VCAA notice was not appropriately tailored to the claim before VA, I would hold that the Board erred in finding that the VCAA notice was adequate in this case.