Citation Nr: 1508832 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 12-17 178 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, Wisconsin


THE ISSUE

Entitlement to service connection for the cause of the Veteran's death. 


REPRESENTATION

Appellant represented by: Tennessee Department of Veterans' Affairs


ATTORNEY FOR THE BOARD

S. D. Regan, Counsel




INTRODUCTION

The Veteran served on active duty from December 1965 to December 1968. The appellant seeks benefits as his surviving spouse. 

This matter is before the Board of Veterans' Appeals (Board) on appeal of a November 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Milwaukee, Wisconsin, which denied service connection for the cause of the Veteran's death. 

In January 2014, the Board remanded this appeal for further development. 


FINDINGS OF FACT

1. The Veteran did not serve in the Republic of Vietnam and the evidence does not establish that he was exposed to Agent Orange during his period of service. 

2. The Veteran died in April 2011. The death certificate lists the immediate cause of death as undifferentiated sepsis due to or as a consequence of metastatic esophageal cancer. These disorders began many years after service and were not caused by any incident of service, including Agent Orange exposure. 

3. At the time of the Veteran's death, service connection was not established for any disorders. 


CONCLUSION OF LAW

The criteria for service connection for the cause of the Veteran's death have not been met. 38 U.S.C.A. §§ 1310, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.312 (2014). 
REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to provide notice of the information and evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2014).

An October 2011 letter satisfied the duty to notify provisions. 

Certain additional notice requirements attach in the context of a claim for Dependency Indemnity and Compensation (DIC) benefits based on service connection for the cause of death. See Hupp v. Nicholson, 21 Vet. App. 342 (2007). Generally, section 5103(a) notice for a DIC case must include: (1) a statement of the conditions, if any, for which a veteran was service-connected at the time of his or her death; (2) an explanation of the evidence and information required to substantiate a DIC claim based on a previously service-connected condition; and (3) an explanation of the evidence and information required to substantiate a DIC claim based on a condition not yet service-connected. The content of the section 5103(a) notice letter will depend upon the information provided in the claimant's application. The October 2011 letter essentially notified the appellant of the information required to comply with the requirements indicated in Hupp, 21 Vet. App. at 342. 

VA also has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c). 

The Veteran's service treatment records have been obtained. Post-service VA and private treatment records have also been obtained, including those created at the time of the Veteran's death. Pursuant to the Board's January 2014 remand, the Veteran's personnel records were obtained, as well as a June 2014 response from the United States Army and Joint Services Records Research Center (JSRRC). In June 2014, the appellant stated that she has sent in everything that she has.

Although a VA opinion was not provided in connection with the claim, the Board finds that one is not necessary to make a decision on the claim. As explained in the analysis section below, the evidence does not even indicate that the disease process leading to the Veteran's death may be related to his period of service. Additionally, the evidence does not show that the Veteran suffered an event, injury or disease in service to which his death may be related. Thus there is no reasonable possibility that such assistance would aid in substantiating the claim. See 38 U.S.C.A. § 5103A(a); DeLaRosa v. Peake, 515 F.3d 1319, 1322 (Fed. Cir. 2008). Thus, VA's duty to assist has also been met. 

II. Analysis

To establish service connection for the cause of the Veteran's death, the evidence must show that a service-connected disability was either the principal cause or a contributory cause of death. For a service-connected disability to be the principal (primary) cause of death, it must singly or with some other condition be the immediate or underlying cause of death or be etiologically related. For a service-connected disability to constitute a contributory cause, it must contribute substantially or materially; it is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 
38 U.S.C.A. § 1310; 38 C.F.R. § 3.312. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection generally requires credible and competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Hickson v. West, 12 Vet .App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498 (1995). Service connection for a "chronic disease," may be granted if manifest to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113; 1131, 1137; 38 C.F.R. §§ 3.307, 3.309. 

Determinations as to service connection will be based on review of the entire evidence of record, to include all pertinent medical and lay evidence, with due consideration to VA's policy to administer the law under a broad and liberal interpretation consistent with the facts in each individual case. 38 U.S.C.A. § 1154(a); 38 C.F.R. § 3.303(a). 

The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). 

A veteran who served in the Republic of Vietnam during the Vietnam era is presumed to have been exposed during such service to certain herbicide agents (e.g., Agent Orange). In the case of such a veteran, service incurrence for the following diseases will be presumed if they are manifest to a compensable degree within specified periods, even if there is no record of such disease during service: chloracne or other acneform diseases consistent with chloracne, type 2 diabetes, Hodgkin's disease, chronic lymphocytic leukemia, multiple myeloma, non-Hodgkin's lymphoma, acute and sub-acute peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, and trachea), and soft-tissue sarcomas. 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307(a)(6), 3.309(e). Effective August 31, 2010, ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm) and coronary bypass surgery; and stable, unstable and Prinzmetal's angina), is included as a disease associated with herbicide exposure under 38 C.F.R. § 3.309(e). (Under 38 C.F.R. § 3.309(e), the term ischemic heart disease does not include hypertension or peripheral manifestations of arteriosclerosis such as peripheral vascular disease or stroke, or any other condition that does not qualify within the generally accepted medical definition of Ischemic heart disease. 38 C.F.R. § 3.309(e) Note 3.) 

"Service in the Republic of Vietnam" includes service in the inland waterways of Vietnam and excludes veterans who served aboard ships operating in Vietnam's offshore waters unless the conditions of service involved duty or visitation in the Republic of Vietnam. 38 C.F.R. § 3.307(a)(6)(iii). Service on a deep-water naval vessel off the shores of Vietnam without proof of actual duty or visitation in the Republic of Vietnam may not be considered service in the Republic of Vietnam for purposes of 38 U.S.C.A. § 101(29)(A). Service in the Republic of Vietnam is interpreted as requiring service on the landmass of Vietnam. Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008). "Inland waterways" are not defined in VA regulations; however, the Board may refer to the VA Adjudication Procedure Manual for interpretive guidance. Inland waterways include rivers, canals, estuaries, and delta areas, such as those on which the Vietnam "brown water" Navy operated. VA has also compiled a list of Navy and Coast Guard ships, including "blue water" ships that were associated with service in Vietnam and exposure to herbicide agents. 

The Veteran was not service-connected for any disorders during his lifetime. However, the appellant essentially contends that the Veteran's death as a result of esophageal cancer was caused by exposure to Agent Orange during his period of service. She specifically alleges that the Veteran was exposed to Agent Orange while serving aboard the USS Borie. She also reports that the Veteran started having problems with his esophagus two or three years after he was discharged from the Navy. 

The Veteran served on active duty from December 1965 to December 1968. His service personnel records indicate that he served aboard the USS Borie from March 1966 to December 1968. Such records also indicate that the USS Borie served in the Vietnam Combat Zone from May 12, 1968 to May 30, 1968; June 19, 1968 to June 30, 1968; July 1, 1968 to July 6, 1968; July 23, 1968 to July 31, 1968; August 1, 1968 to August 17, 1968; August 27, 1968 to August 31, 1968; September 1, 1968 to September 15, 1968; September 25, 1968 to September 30, 1968; and on October 1, 1968. The Veteran's service personnel records indicate that USS Borie visited a number of ports, but none of the listed ports were in the Republic of Vietnam. 

A May 2009 response from the National Personnel Records Center (NPRC) indicated that they were unable to determine whether or not the Veteran served in the Republic of Vietnam. It was noted that the Veteran served aboard the USS Borie which was in the official waters of the Republic of Vietnam from May 12, 1968 to May 31, 1968; June 17, 1968 to July 8, 1968; July 22, 1968 to August 19, 1968; September 1, 1968 to September 15, 1968; and from September 23, 1968 to October 1, 1968. The NPRC indicated that the record provided no conclusive proof of in-country service. 

A June 2014 response from the JSRRC related that the Naval History and Heritage Command, Washington, Navy Yard, D.C., which was the custodian of Navy ship histories, did not maintain a 1968 command history for the USS Borie (DD-704). The JSRRC indicated that they had reviewed a general ships history and the July 23, 1968 to September 20, 1968 deck logs submitted by the USS Borie. It was noted that the scant history provided documented that the destroyer conducted a Western Pacific (WESTPAC) combat deployment from March 1968 to November 1968. The JSRRC indicated that the deck logs documented that the USS Borie provided support to the USS Intrepid (CVS-11) on Yankee Station in the Gulf of Tonkin from July 25, 1968 to August 3, 1968, and was tasked to provide naval gunfire support off the coast of the II Corps Tactical Zone during the period from August 3, 1968 to August 11, 1968. It was noted that during the period from August 14, 1968 to August 19, 1968, the USS Borie conducted Positive Identification Radar Advisory Zone (PIRAZ) duties in the Gulf of Tonkin and provided support to the USS Bon Homme Richard (CVA-31) on Yankee Station from August 27, 1968 to September 14, 1968. The JSRRC stated that the USS Borie was moored in Hong Kong on September 20, 1968. The JSRRC maintained that the history and deck logs did not document that the ship transited inland waterways, docked, or that personnel went ashore in the Republic of Vietnam. 

In a December 2014 VA memorandum, regarding Agent Orange Verification Review, the RO concluded that the evidence indicated that the USS Borie did not travel in the inland waterways of the Republic of Vietnam during the time the Veteran was aboard the ship. The RO found that based upon the evidence and records, the Veteran's alleged exposure to Agent Orange could not be supported due to the fact that the Veteran could not be placed in or near Vietnam or the inland waterways of Vietnam. 

In light of the above, the Board finds that the evidence in the claims file is insufficient to establish the requisite service in the Republic of Vietnam to allow for a presumption of exposure to herbicide agents such as Agent Orange. See 38 C.F.R. § 3.307(a)(6)(iii); Haas, 525 F.3d at 1168. Nor does the evidence show actual exposure to Agent Orange.

Additionally, as noted previously, the VA Adjudication Procedure Manual includes a compiled list of "blue water" naval ships that operated in "brown water" sufficient to allow for a finding of a presumption of exposure to herbicide agents. The updated list as of December 2014 includes multiple destroyer-class ships, but the USS Borie is not among them. Thus, current research does not show that the USS Borie had "brown water" service in Vietnam. 

The Veteran's service treatment records do not show complaints of or treatment for undifferentiated sepsis or for any esophageal disorders, including metastatic esophageal cancer. 

Post-service private and VA treatment records show treatment for numerous disorders including metastatic esophageal cancer; renal cell carcinoma; status post a nephrectomy; hypertension; gastroesophageal reflux disease; and diverticulosis. 

An April 2011 death summary from the Vanderbilt University Medical Center, Vanderbilt University Hospital, indicated that the Veteran was status post recent "SBR" for "SB" metastasis and perforation in March 2011, and that he presented with lower left quadrant pain. It was noted that a computed tomography scan was concerning for possible malignant ascites. The examiner reported that the Veteran's clinical course deteriorated and that he became tachycardic, hypotensive, and with oliguria and that he was not responsive to fluid boluses. The examiner stated that comfort care was then elected per the patient's and family wishes. The cause of death was listed as multi-organ dysfunction in the setting of metastatic esophageal cancer. The final principal diagnosis was metastatic esophageal cancer. 

The Veteran died in April 2011. The death certificate lists the immediate cause of death as undifferentiated sepsis due to or as a consequence of metastatic esophageal cancer. 

A July 2012 statement from J. Millspaugh, M.D., reported that the Veteran died from complications stemming from esophageal cancer with metastatic disease, including a brain resection in February 2011 that unfortunately showed progression. Dr. Millspaugh stated that the Veteran suffered peritonitis secondary to a perforated viscus, which stemmed from a small bowel perforation during treatment. It was noted that secondary to the perforated viscus, the Veteran suffered supraventricular tachycardia, acute respiratory insufficiency, anemia, neutropenia, multiple electrolyte abnormalities, and then multi-organ failure as his body was unable to manage having survived renal cell carcinoma with a nephrectomy in 2007. 

The Board observes that there is no medical evidence of undifferentiated sepsis or any esophageal problems, to include esophageal cancer, during the Veteran's period of service, or for decades after service. The evidence does not even suggest that any such disorders were related to any incident of service. Additionally, the appellant has not alleged that the Veteran was treated for esophageal cancer during service. 

As noted above, the Board has concluded that the Veteran did not have "brown water" service in Vietnam. Additionally, undifferentiated sepsis and esophageal cancer are not among the diseases listed as presumptively associated with Agent Orange exposure. Thus, the appellant is not entitled to service connection for the cause of the veteran's death on a presumptive basis due to herbicide exposure. 38 C.F.R. § 3.309(e). The appellant may, nonetheless, establish service connection if the evidence shows that the Veteran's undifferentiated sepsis and esophageal cancer were caused by some other incident of service. 

The Board observes, however, that there is no competent evidence of record showing that the specific disorders that resulted in the Veteran's death, undifferentiated sepsis and esophageal cancer, were incurred in or aggravated by service or were proximately due to or the result of any disease or injury incurred in or aggravated by service. 

The Board has considered the appellant's contentions. The Board observes that while the appellant is competent to report that she observed the Veteran with symptoms that she felt were related to esophageal problems during or after service, she is not competent to provide a medical opinion regarding the etiology of any such disorder. Thus, the appellant's lay assertions of a connection to service are not competent. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (lay evidence can be competent and sufficient to establish a diagnosis of a condition when a layperson is competent to identify the medical condition, or reporting a contemporaneous medical diagnosis, or the lay testimony describing symptoms at the time supports a later diagnosis by a medical professional); Buchanan v. Nicholson, 451 F.3d. 1331 (Fed. Cir. 2006) (lay evidence is one type of evidence that must be considered and competent lay evidence can be sufficient in and of itself). 

The weight of the credible evidence demonstrates that the conditions involved in the Veteran's death occurred many years after service and were not caused by any incident of service. The fatal conditions were not incurred in or aggravated by service, and they were not service connected. A disability incurred in or aggravated by service did not cause or contribute to the Veteran's death, and thus there is no basis to award service connection for the cause of the Veteran's death. 

In sum, the preponderance of the evidence is against the claim for entitlement to service connection for the cause of the Veteran's death; there is no doubt to be resolved; and service connection is not warranted. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

Service connection for the cause of the Veteran's death is denied. 



____________________________________________
RYAN T. KESSEL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs