Citation Nr: 1237360 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 06-18 714 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUE

Entitlement to service connection for the cause of the Veteran's death.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

K. Marenna, Associate Counsel


INTRODUCTION

The Veteran had verified active service from June 1947 to February 1949, from September 1949 to March 1955, and from October 1955 to September 1967. He died in May 2002. The appellant is his surviving spouse.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan.

This case was previously before the Board in February 2009 and August 2011. Subsequently, the Board requested an opinion from a physician with the Veterans Health Administration (VHA) in July 2012. The requested opinion was provided in August 2012. The appellant and her representative were provided copies of the opinion and accorded a 60-day period to reply pursuant to 38 C.F.R. § 20.903 (2012). The case has been returned to the Board for review.
 
In November 2008, a Travel Board hearing was held before the undersigned Veterans Law Judge and a transcript of that hearing is of record. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2012). 38 U.S.C.A. § 7107(a)(2) (West 2002).



FINDINGS OF FACT

1. The Veteran died in May 2002; the death certificate lists the immediate cause of death as aspiration pneumonitis due to status post colectomy for tumor. Other significant conditions contributing to the death, but not resulting in the underlying cause, were atrial fibrillation, renal insufficiency, and encephalopathy. 

2. At the time of the Veteran's death, service connection had been established for residuals of excision of basal cell carcinoma of the face, rated noncompensable.

3. There has been no demonstration by competent medical, or competent and credible lay, evidence of record that the service-connected disability was either the principal or a contributory cause of the Veteran's death.


CONCLUSION OF LAW

The cause of the Veteran's death was not incurred in or aggravated by active service, and may not be presumed to have been so incurred or aggravated. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1137, 1310 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.312 (2012). 

REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Veterans Claims Assistance Act (VCAA)

Duty to Notify

With respect to the appellant's claim, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326.

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2008). The United States Court of Appeals for Veterans Claims (Court) held that VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002).

The Court observed that a claim of entitlement to service connection consists of five elements, of which notice must be provided prior to the initial adjudication: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 490 (2006); see also 38 U.S.C. § 5103(a). Compliance with the first Quartuccio element requires notice of these five elements. See id. 

The Court held that in the context of a claim for cause of death benefits, 38 U.S.C.A. § 5103(a) notice must include (1) a statement of the conditions, if any, for which a veteran was service connected at the time of his or her death; (2) an explanation of the evidence and information required to substantiate a cause of death claim based on a previously service-connected condition; and (3) an explanation of the evidence and information required to substantiate a cause of death claim based on a condition not yet service connected. Hupp v. Nicholson, 21 Vet. App. 342, 352-53 (2007).

Prior to initial adjudication of the appellant's claim a letter dated in January 2005 informed the appellant of the elements of a claim for service connection for the cause of the Veteran's death. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1); Quartuccio, at 187. An April 2006 VCAA notice letter also informed the appellant of information needed to support her claim. VA provided Hupp compliant notice in March 2009, including notice of the Veteran's service-connected disabilities during his lifetime, and that service connection may be established for the cause of the Veteran's death due to conditions for which service connection had not been established during his life if shown to be the cause of death. Although this letter was not sent prior to initial adjudication of the appellant's claim, this was not prejudicial to her, since she was subsequently provided adequate notice and the claim was readjudicated and an additional supplemental statement of the case (SSOC) was provided to the appellant. See Prickett v. Nicholson, 20 Vet. App. 370 (2006). 

Duty to Assist

The Board concludes VA's duty to assist has been satisfied. The Veteran's service treatment records and VA medical records are in the file. The Veteran's treatment records were obtained from Pensacola Naval Hospital, in compliance with the August 2011 Board remand. See Stegall v. West, 11 Vet. App. 268 (1998). Private medical records identified by the appellant have been obtained, to the extent possible. The appellant's Social Security Administration records have been associated with the file. The appellant has at no time referenced outstanding records that she wanted VA to obtain or that she felt were relevant to the claim.

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law.
The appellant was afforded medical opinions as to whether the Veteran's cause of death can be directly attributed to service or to his service-connected disabilities in July 2010, March 2011, March 2012, and August 2012. As discussed below, the July 2010 and March 2011 VA opinions were obtained prior to the receipt of records from the Pensacola Naval Hospital. Although the March 2012 VA opinion was obtained after receipt of the records, the VA examiner did not provide a rationale for her opinion and the Board finds that the opinion is inadequate. The Board finds that the August 2012 VHA opinion is adequate. The VA examiner reviewed the evidence of record and provided a thorough rationale for the opinion. Consequently, further opinion is not needed on the claim and VA has satisfied its duty to assist.

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Newhouse v. Nicholson, 497 F.3d 1298 (Fed. Cir. 2007).

II. Legal Criteria

According to VA law and regulation, service connection may be granted for disability resulting from a disease or injury incurred or aggravated during active service. See 38 U.S.C.A. §§ 1110, 1131 (West 2005); 38 C.F.R. § 3.303 (2012). Service connection also is permissible for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Certain chronic conditions will be presumed to have been incurred or aggravated in service if manifested to a compensable degree within one year after service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1133; 38 C.F.R. §§ 3.307, 3.309.

The death of a Veteran will be considered as having been due to a service-connected disability when the evidence establishes that such disability was either the principal or a contributory cause of death. See 38 U.S.C.A. § 1310; 38 C.F.R. § 3.312(a). For a service-connected disability to be considered the primary cause of death, it must singly, or with some other condition, be the immediate or underlying cause, or be etiologically related thereto. See 38 C.F.R. § 3.312(b). In determining whether a service-connected disability contributed to death, it must be shown that it contributed substantially or materially, that it combined to cause death, or that it aided or lent assistance to the production of death. See 38 C.F.R. § 3.312(c)(1). 

The VA will give due consideration to all pertinent medical and lay evidence in evaluating a claim for death benefits. Lay evidence may be competent and sufficient to establish a diagnosis of a condition. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (citing Jandreau v. Nicholson 92 F.3d 1372 (Fed. Cir. 2007)).

Service-connected diseases or injuries involving active processes affecting vital organs receive careful consideration as a contributory cause of death, the primary cause being unrelated, from the viewpoint of whether there were resulting debilitating effects and general impairment of health to an extent that would render the person materially less capable of resisting the effects of other disease or injury that primarily caused death. See 38 C.F.R. § 3.312(c)(3). There are primary causes of death, which by their very nature are so overwhelming that eventual death can be anticipated irrespective of coexisting conditions, but, even in such cases, there is for consideration whether there may be a reasonable basis for holding that a service-connected condition was of such severity as to have a material influence in accelerating death. See 38 C.F.R. § 3.312(c)(4). 

III. Analysis

The Board has thoroughly reviewed all the evidence in the claims folder. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, each piece of evidence of record. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The appellant must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the appellant).

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The appellant asserts that the skin cancer the Veteran had in service, residuals of which were service-connected, caused or contributed to the Veteran's death. In her October 2004 claim, the appellant stated that she believed the Veteran's doctors suspected the Veteran's skin cancer had reached the colon, and thus the final surgery. 

At the time of his death, the Veteran was service-connected for residuals of excision of basal cell carcinoma of the face, rated as noncompensable. Service treatment records reflect that the Veteran underwent excision of a basal cell carcinoma on the right side of his face during service. 

The Veteran died in May 2002. The Veteran's death certificate lists the immediate cause of death as aspiration pneumonitis due to (or as a consequence of) status post colectomy for tumor. Other significant conditions contributing to his death but not resulting in the underlying cause were atrial fibrillation, renal insufficiency and encephalopathy. A May 2002 death summary from Thomas Hospital reflects that the Veteran was admitted in April 2002 and underwent a right colectomy for neoplasms of the cecum of uncertain behavior. His pathology returned an adenomatous polyp. On the second post-operative day the Veteran had some transient hypoxia. The Veteran's condition progressively worsened. The principal diagnosis was listed as benign neoplasm of colon. The secondary diagnoses were aspiration pneumonitis, respiratory insufficiency, gastric ileus, supraventricular dysrhythmia, acute renal failure, encephalopathy, and hypertension. 

Records from Pensacola Naval Hospital indicate that the Veteran had recurrent basal cell carcinoma and invasive squamous cell carcinoma. A November 1984 Pensacola Naval Hospital record indicates that the appellant had recurrent noduloulcerative basal cell epithelioma (BCE). 

An October 1995 private treatment record indicates the Veteran was diagnosed with superficial basal cell carcinoma of the nasal tip and squamous cell carcinomas of the left forehead (recurrent by history), left ear upper antihelix and left upper postauricular sulcus. 

A September 1998 private treatment record reflects that the Veteran had persistent dysphagia and had previously undergone an endoscopy and dilation earlier that year. The impression was hiatus hernia and esophageal stricture. 

A January 2002 Pensacola Naval Hospital record indicates that the Veteran had actinic keratosis with a history of skin cancer. The record noted that the Veteran was followed by a civilian hematologist. 

An April 2002 short stay assessment record prior to the colonoscopy reflects that the Veteran's admission complaint was that he presented with a family history of colon cancer. An April 2002 private endoscopy report reflected that the impression was internal hemorrhoids, colon polyps and diverticulosis. The note indicated that the Veteran could consider a colectomy. The records concerning the Veteran's colonscopy noted that the Veteran had a family history of basal cell epithelioma.

An April 2002 short stay surgery record reflects that the Veteran was there for a right colectomy for a neoplasm of the colon. The Veteran's history of basal cell epithelioma was not noted. An April 2002 private colonoscopy report reflects that the results indicated a rectal mass. The Veteran underwent a right colectomy for a neoplasm of the cecum of uncertain behavior. The principal diagnosis following the colectomy was benign neoplasms of the colon. 

An April 2002 private surgical pathology report indicates that the Veteran had a right colectomy. The diagnosis was adenomatous polyps and submucosal lipoma. Nine pericolonic lymph nodes were identified, and they were negative for a tumor. 

A May 2002 death summary reflects that the Veteran had a principal diagnosis of benign neoplasm of the colon. The Veteran had secondary diagnoses of aspiration pneumonitis, respiratory insufficiency, gastric ileus, supraventricular dysrhythmia, acute renal failure, encephalopathy, and hypertension. The summary noted that the Veteran was admitted in April 2002 and underwent a right colectomy for a neoplasm of the cecum of uncertain behavior. His pathology returned an adenomatous polyp. The Veteran was doing well on the first postoperative day. However, on the second postoperative day, the Veteran had some transient hypoxia. He had recurrent episodes of hypoxia and respiratory insufficiency. The Veteran developed multiorgan dysfunction, including neurologic dysfunction, pulmonary dysfunction and renal dysfunction. His condition progressively worsened. 

In a December 2008 statement, E.M.M. stated that he was assigned to the laboratory at the Pensacola Hospital Naval Air Station Hospital from August 1972 to July 1975. E.M.M. recalled that the Veteran's CBC with differential revealed several immature blood cells in which the pathologist would need to report. E.M.M. stated that to the best of his recollection, the Veteran was diagnosed with a rare blood disease and the South Pacific was mentioned as a possible locale of the onset of the disease. 

As a lay person, E.M.M. is competent to report symptoms capable of lay observation, such as his recollection that the Veteran had been diagnosed with a rare blood disease. The claims file contains several CBC reports from the period referenced by E.M.M. However, the Board does not find any reference to a blood disease. A June 1990 private treatment record reflects that the Veteran had a right above-the-knee amputation and chronic phlebitis. However, there are no contemporaneous records from August 1972 to July 1975 indicating the Veteran had a rare blood disease. Nevertheless, the Board need not make a determination as to the credibility of E.M.M.'s statement as, regardless of his credibility, there is no indication in the medical evidence of record that the Veteran's adenomatous colon polyp and subsequent death were related to a rare blood condition. E.M.M.'s statement thus does not provide evidence that the Veteran's cause of death is related to service. 

The appellant was provided with a VA opinion in July 2010. The VA examiner found that it was less likely as not that the Veteran's death was caused by or a result of his skin cancer. The VA examiner noted that the Veteran's death certificate reflected that his immediate cause of death was aspiration pneumonitis secondary to a colectomy for tumor. Other significant conditions contributing were atrial fibrillation, renal insufficiency, and encephalopathy. As the VA examiner did not provide a rationale for the opinion and records were added to the claims file following the opinion, the July 2010 VA opinion is inadequate and has no probative value.

Another VA opinion was obtained in March 2011. The VA clinician found that it was less likely as not that the Veteran's death was caused by or a result of malignant skin neoplasm. The VA clinician stated that the death certificate showed that the cause of death of the Veteran was aspiration pneumonitis and status post-colectomy for tumor. Other significant conditions contributing to the death but not resulting in the underlying cause given were atrial fibrillation, renal insufficiency, and encephalopathy. The VA clinician opined that none of the above conditions were related to or caused by the basal cell or squamous cell cancer for which the Veteran was service-connected. The VA clinician stated that there was no known association in present medical literature, between the Veteran's adenomatous polyps of the colon and his service-connected basal cell and/or squamous skin cancers. There was also no known association between the Veteran's skin cancer and the known causes of death listed on the medical death certificate. The VA clinician did not have access to medical records later added to the claims file. The Board notes that the medical records added to the claims file following the March 2011 opinion indicated that the Veteran had a history of skin cancer and did not add substantially new information to the record. Thus, although the March 2011 VA clinician did not review all of the evidence of record, the opinion has some probative value.

Another VA opinion as obtained in March 2012. The VA clinician found that the Veteran's death was not casually related to the Veteran's service-connected disability, residuals of excision of basal cell carcinoma of the face. The VA clinician opined that there was no clinical correlation/nexus between the Veteran's service-connected basal cell carcinoma of the face and aspiration pneumonitis, adenomatous polyps, atrial fibrillation, renal insufficiency and encephalopathy. However, the VA clinician did not provide a rationale. Thus, the March 2012 VA opinion has no probative value.

A VHA opinion was obtained in August 2012. The VA physician noted that the Veteran had excision of basal cell carcinomas and actinic keratoses skin lesions over the course of many years, during and after service. The VA physician noted many instances of treatment of basal cell carcinoma and acinic keratoses in the claims file from August 1965 through August 1997. The VA physician noted that in 2002, the Veteran had a colonoscopy which showed a cecal tumor. On April 30, 2002, he was admitted to the hospital for a colectomy of the cecal tumor. The pathology was adenomatous polyp. On the first postoperative day, he had a transient hypoxia. On the second postoperative day, the Veteran became hypoxic again, and had respiratory distress and was intubated. He developed aspiration pneumonia, which did not respond to treatment, and he went on to multi-organ failure and died. 

The August 2012 VA physician stated that aspiration pneumonitis occurs when body fluid from the oropharynx and/or stomach enters the lungs. The VA physician noted that the parts of the body involved in aspiration pneumonia were the oropharynx, stomach, esophagus, lungs, and airways leading to the lungs. The VA physician stated that the skin and face are not involved in aspiration pneumonia.

The August 2012 VA physician opined that aspiration pneumonia is not related to basal cell carcinoma of the face, not related to skin lesions, not related to treatment for basal cell carcinoma or skin lesions, and not related to residuals of treatment for skin lesions of the face. The VA physician also noted that there is no relationship between adenomatous polyps of the colon and basal cell carcinoma of the skin, or residuals of an excision of basal cell carcinoma. The VA physician opined that it was less likely than not that the Veteran's service-connected disability, residuals of excision of basal cell carcinoma of the face, singly or with some other condition, was the immediate or contributing cause of the Veteran's death, or was otherwise casually related to the Veteran's death. As the VA physician provided a rationale for the opinion, specifically that there is no relationship between adenomatous polyps of the colon and basal cell carcinoma of the skin, the Board finds that the VA opinion is adequate. Thus, the VHA opinion is probative.

The evidence of record includes a June 2005 internet article. The article states that melanoma is capable of spreading to every tissue and organ in the body. A June 2005 e-mail with general information about basal cell carcinoma reflects that "this type of skin cancer does not typically spread." The Board has considered the information in the articles. As the information is general in nature, and not specific to the appellant's claim, the Board finds the August 2012 VHA opinion to be more probative. The Board also notes that the Veteran was consistently diagnosed with basal cell carcinoma, which the information indicates does not typically spread.

There is no clinical medical nexus evidence of record relating the Veteran's cause of death to his service or a service-connected disability. The medical evidence of record indicates that the Veteran's benign neoplasm of the colon was first manifested in 2002, many years after his service in the military ended. See Savage v. Gober, 10 Vet. App. 488 (1997) (requiring medical evidence of chronicity and continuity of symptomatology after service). The appellant has not asserted that the neoplasm of the colon was first manifested in service.

As discussed above, the evidence of record reflects that the Veteran underwent a right colectomy for a neoplasm of the cecum of uncertain behavior. The pathology returned an adenomatous polyp. The Veteran's condition deteriorated following the surgery and he passed away due to aspiration pneumonitis, respiratory insufficiency, gastric ileus, supraventricular dysrhythmia, acute renal failure, encephalopathy and hypertension. The appellant has asserted that the Veteran had the colectomy because his doctors feared the benign neoplasm of the colon was cancerous.

The competent medical evidence of record is against a finding of a nexus between the Veteran's death and his service-connected residuals of basal cell carcinoma. As discussed above, the Veteran had a colectomy for a polyp. Despite the appellant's contentions, there is no medical evidence that the Veteran had the colectomy because of his basal cell carcinoma. The April 2002 short stay assessment record and other records relating to the colectomy indicated that the Veteran had a family history of colon cancer, but did not reference his history of basal cell carcinoma.

The August 2012 VHA opinion reflects that the Veteran developed aspiration pneumonia following the colectomy of the cecal tumor. The VA clinician stated that there was no relationship between adenomatous polyps of the colon and basal cell carcinoma of the skin, including residuals. The VA clinician also stated that aspiration pneumonia is not related to basal cell carcinoma of the face. Consequently, the VA clinician found that it was less likely than not that the Veteran's service-connected disability, residuals of excision of basal cell carcinoma of the face, singly or with some other condition, was the immediate or a contributing cause of the Veteran's death, or was otherwise casually related to the Veteran's death. As noted above, the Board finds the VHA opinion to be probative. 

The appellant contends that the Veteran's his service-connected residuals of basal cell carcinoma contributed to his death. While the appellant is competent to report her observations, the Board does not find that the appellant is competent to opine as to an etiological relationship between the Veteran's service-connected residuals of basal cell carcinoma and his death. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). The Board finds that the probative value of any such opinion is outweighed by that of the VA physician who wrote the August 2012 VHA opinion. The VA physician has education, training and experience in evaluating the etiology of a cecal tumor. There is no evidence that the appellant has the same level of medical expertise. Moreover, the opinion provided by the August 2012 VA physician is probative because the physician provided a rationale for the opinion provided. The VA physician reviewed the claims folder, including the Veteran's death certificate, terminal hospitalization records, and private and VA medical records. The VA physician opined that it was less likely than not that the Veteran's service-connected disability, residuals of excision of basal cell carcinoma of the face, singly or with some other condition, was the immediate or contributing cause of the Veteran's death, or was otherwise casually related to the Veteran's death. Additionally, as noted above, the contemporaneous treatment records from April 2002 indicate the Veteran had a family history of colon cancer, but did not reference his history of basal cell carcinoma. Although the appellant is competent to report evidence capable of lay observation, such as the Veteran having the surgery because of his history of basal cell carcinoma, as the assertion is inconsistent with the contemporaneous medical evidence of record, the Board finds it to be less than credible. Thus, the Board finds that the evidence of record does not support the appellant's assertion that the Veteran had the surgery because of his history of skin cancer.

As noted above, there are primary causes of death which by their very nature are so overwhelming that eventual death can be anticipated irrespective of co-existing conditions, but, even in such cases, there is for consideration whether there may be a reasonable basis for holding that a service-connected condition was of such severity as to have a material influence in accelerating death. In such a situation, however, it would not generally be reasonable to hold that a service-connected disability accelerated death unless such condition affected a vital organ and was of itself of a progressive or debilitating nature. 38 C.F.R. § 3.312(c)(3), (4). The tenets of this rule clearly apply in the present case. There is no indication that the Veteran had a service-connected disability that affected a vital organ and was of such severity as to have a material influence in accelerating death. The Board therefore finds that service connection for the cause of the Veteran's death is not warranted. 

In sum, a preponderance of the evidence of record fails to demonstrate that the Veteran's cause of death was related to his service in the military, or any service-connected disability. The Board acknowledges the sincerity of the appellant's beliefs that the Veteran death was somehow attributable to his service in the military. However, there is no persuasive medical evidence of record supporting this allegation. As a layperson, the appellant does not have the necessary medical training or expertise to make this determination herself. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). The Board finds the August 2012 VHA opinion to be probative and supported by a rationale. The August 2012 VA physician found that it was less likely than not that the Veteran's service-connected disability, residuals of excision of basal cell carcinoma of the face, singly or with some other condition, was the immediate or contributing cause of the Veteran's death, or was otherwise causally related to the Veteran's death. Thus, the Board concludes that the Veteran's military service did not cause or contribute to his death. Accordingly, the appellant's claim of entitlement to service connection for the cause of the Veteran's death must be denied. As the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990). 


ORDER

Entitlement to service connection for the Veteran's cause of death is denied.



____________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs