Citation Nr: 1714101 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 12-04 299 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boise, Idaho


THE ISSUE

Entitlement to service connection for the cause of the Veteran's death. 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESSES AT HEARING ON APPEAL

Appellant and her daughter




ATTORNEY FOR THE BOARD

T. Grzeczkowicz, Associate Counsel


INTRODUCTION

The Veteran served on active duty from May 1955 to November 1980. He died in December 2010. The appellant is the Veteran's surviving spouse. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2011 decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) and Pension Management Center in St. Paul, Minnesota. 

In March 2012, a hearing was held in this matter before a Decision Review Officer. A transcript of that hearing is associated with the claims file. 

In a September 2014 decision, the Board denied entitlement to service connection for the cause of the Veteran's death. The Appellant appealed that decision to the United States Court of Appeals for Veterans Claims (Court). In a June 2015 Order, pursuant to the parties' Joint Motion for Remand, the Court vacated and remanded the Board's decision. The Board thereafter remanded the case for further development. 

After reviewing the development conducted in response to the Board's remand instructions, the Board finds that there has been substantial compliance with the Board's remand. Stegall v. West, 11 Vet. App. 268 (1998) (finding that a remand by the Board confers on the appellant the right to compliance with the remand orders).


FINDINGS OF FACT

1. The Veteran died in December 2010 from metastatic non-small cell lung carcinoma. 

2. At the time of the Veteran's death, the Veteran was not service-connected for any disability. 

3. The Veteran did not serve in the Republic of Vietnam or in the waters offshore of the Republic of Vietnam during the Vietnam War Era. 

4. Tactical or commercial herbicides were not sprayed at Udorn airbase during any period in which the Veteran served. 

5. The Veteran's lung cancer did not originate in service or until years thereafter, and is not otherwise etiologically related to service. 


CONCLUSION OF LAW

The criteria for service connection for the cause of the Veteran's death have not been met. 38 U.S.C.A. § 1101, 1110, 1112, 1116, 1131, 1310 (West 2014); 38 C.F.R. § 3.102, 3.303, 3.307, 3.309, 3.312 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duty to Notify and Assist 

Upon receipt of a substantially complete application, VA must notify the claimant and any representative of any information, medical evidence, or lay evidence not previously provided to VA that is necessary to substantiate the claim. The notice must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103, 5103A, 5107; 38 C.F.R. § 3.159; Pelegrini v. Principi, 18 Vet. App. 112 (2004). If VA does not provide adequate notice of any element necessary to substantiate the claim, or there is any deficiency in the timing of the notice, the burden is on the claimant to show that prejudice resulted from any notice error. Shinseki v. Sanders, 129 S. Ct. 1696 (2009). 

In a claim for service connection for a veteran's cause of death, VA's notice requirements include (1) a statement of the conditions, if any, for which a Veteran was service-connected at the time of his or her death; (2) an explanation of the evidence and information required to substantiate a DIC claim based on a previously service-connected condition; and (3) an explanation of the evidence and information required to substantiate a DIC claim based on a condition not yet service-connected. Hupp v. Nicholson, 21 Vet. App. 342 (2007). The Board notes that the continued vitality of the Court's holding in Hupp concerning element (1) is questionable, in light of a number of decisions by the U.S. Court of Appeals for the Federal Circuit making clear that 38 U.S.C.A. § 5103(a) does not, in fact, require VA to provide notice that is specific to a claimant's particular circumstances. The Board notes that in any event, the record shows that the appellant received 38 U.S.C.A. § 5103 (a)-compliant notice, including the enhanced notice referenced in Hupp, in January 2011, and that service connection was not in effect for any disorder at the time of the Veteran's death. 

The Board also finds that the duty to assist requirements have been fulfilled. All relevant, identified, and available evidence has been obtained, and the RO has notified the Veteran of any evidence that could not be obtained. The RO obtained the Veteran's service treatment records, the death certificate, records from the Joint Services Records Research Center (JSRRC), records from the Air Force Historical Research Agency (AFHRA), lay statements, and VA and private medical records. The Board finds that a medical opinion is not necessary to satisfy VA's duty to assist in this case. A medical opinion in a cause of death case is necessary when such opinion would aid in substantiating the claim. See Delarosa v. Peake, 515 F.3d 1319, 1322 (Fed. Cir. 2008); 38 U.S.C.A. § 5103A(d); 38 C.F.R. §3.159(c)(4). In this case, the appellant does not contend that the Veteran's fatal cancer began in service or until many years after service. Instead, her claim is predicated on the contention that the Veteran's fatal disorder is related to service exposure to herbicides. As will be discussed in further detail below, the evidence does not establish such exposure. Given the above, the Board finds that a VA opinion is not required.

The appellant has not referred to any additional, unobtained, relevant, available evidence. Thus, the Board finds that VA has satisfied the duty to assist. No further notice or assistance to the Veteran is required to fulfill VA's duty to assist in development. Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

In July 2015, the Board remanded this claim for further development. The purpose of the remand was to determine whether the Veteran was exposed to herbicides at the Udorn facility in Thailand, as prior requests to determine such exposure did not encompass the entire period during which the Veteran was present at the base. Pursuant to the Board's remand, the agency of original jurisdiction (AOJ) submitted a request to the National Personnel Records Center and the Joint Services Records Research Center (JSRRC) for any records documenting the Veteran's exposure to herbicide from February 1972 through November 1973 during the Veteran's service at Udorn Royal Thai Air Force Base (RTAFB) or during temporary duty assignments within the Republic of Vietnam. The JSRRC was unable to establish whether the Veteran served on the perimeter of the RTAFB or whether the Veteran was sent on temporary duty to Vietnam. The RO contacted the Air Force Historical Research Agency for any records documenting the Veteran's exposure to herbicide from February 1972 through November 1973 during the Veteran's service at RTAFB or during any temporary duty assignments within the Republic of Vietnam. The Air Force Historical Research Agency (AFHRA) provided responsive electronic correspondence dated January 21, 2016 and January 28, 2016 that comply with the Board's remand instructions. The RO readjudicated the claim in a November 2016 supplemental statement of the case, considering all of the evidence in this case, including the January 2016 emails from the AFHRA archivist. 

Based on the foregoing actions, the Board finds that there has been substantial compliance with the Board's remand. Stegall v. West, 11 Vet. App. 268 (1998) (finding that a remand by the Board confers on the appellant the right to compliance with the remand orders).

II. Law and Regulations

Service connection for the cause of a Veteran's death is warranted if a service-connected disability either caused or contributed substantially or materially to the cause of death. 38 U.S.C.A. § 1310; 38 C.F.R. § 3.312. In determining whether a service-connected disability contributed substantially or materially to death, the evidence must show that it combined to cause death or that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 38 C.F.R. § 3.312(c)(1); See Gabrielson v. Brown, 7 Vet. App. 36, 39 (1994).

In general, minor service-connected disabilities, particularly those of a static nature or not materially affecting a vital organ, would not be held to have contributed to death primarily due to unrelated disability. In the same category there would be included service-connected disease or injuries of any evaluation (even though evaluated as 100 percent disabling) but of a quiescent or static nature involving muscular or skeletal functions and not materially affecting other vital body functions. 38 C.F.R. § 3.312(c)(2).

A disability present at the time of the Veteran's death may be service-connected if the facts establish that the disability resulted from disease or personal injury incurred in the line of duty or for aggravation of a preexisting injury or disease in active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Generally, to establish a right to compensation for a present disability, the claimant must show (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

A Veteran who served on active duty in the Republic of Vietnam during the period from January 9, 1962 to May 7, 1975 (Vietnam War Era) shall be presumed to have been exposed to an herbicide agent during active service, unless there is affirmative evidence to the contrary. 38 C.F.R. § 3.307(a). Service in the Republic of Vietnam includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 C.F.R. §§ 3.307(a)(6)(iii), 3.313. Furthermore, there is a presumption of service connection for a Veteran who was exposed to an herbicide agent during active service and is diagnosed with a qualifying disability, such as lung cancer, that manifested to a compensable degree at any time after service, unless there is affirmative evidence to show that the disease is not related to exposure to an herbicide agent. 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307(a)(6)(iv), 3.309(e). 

The Board notes that there are no statutory or regulatory presumptions regarding herbicide exposure in Thailand. However, VA may presume, in the absence of sufficient evidence to the contrary, that a Veteran who served in Thailand during the Vietnam War Era was exposed to herbicide agents if: (1) the Veteran was in the Air Force, (2) the Veteran served at the Royal Thai Air Force Bases of U-Tapao, Ubon, Nakhon Phanom, Udorn, Takhli, Korat, or Don Muang, and (3) the Veteran served as a security policeman, security patrol dog handler, or member of a security police squadron, or otherwise served near a base perimeter, as shown by the Veteran's military occupational specialty (MOS), daily work duties, performance evaluations, or other credible evidence. M21-1, Part IV, Subpart ii, Ch. 1(H)(5)(a).

In evaluating a claim, the Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1335 (2006). The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (providing that a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis if (1) the medical issue is within the competence of a layperson, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

If the evidence is competent, the Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007) (observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this regard, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498, 511-12 (1995).
When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

III. Factual Background

According to the December 2010 death certificate, the Veteran's immediate cause of death was metastatic non-small cell lung carcinoma. 

The appellant provided testimony and submitted multiple lay statements asserting that the Veteran's cause of death was lung cancer caused by his exposure to herbicides while he served on active duty in Vietnam and Thailand. 

Service personnel records indicate that the Veteran served on active duty in the Air Force from May 1955 to November 1980. He was stationed at the Udorn Royal Thai Air Force Base (RTAFB) from December 1972 to November 1973. The Veteran's MOS was Jet Engine Technician and he received high ratings for his performance. The records do not mention any service in Vietnam or the waters offshore nor is there any reference to temporary duties performed in Vietnam.
A review of the Veteran's service treatment records (STRs) are silent for any complaints, treatment or diagnosis of a lung condition or pulmonary condition. No abnormalities of the lungs and chest were observed on his retirement examination in August 1980, nor did the Veteran report shortness of breath, pain or pressure in the chest or chronic cough at that time. 

Private treatment reports of record note that the Veteran was diagnosed with metastatic lung carcinoma to bone based on a needle biopsy in June 2010. 

In December 2010 the National Personnel Records Center (NPRC) indicated that they were unable to determine whether the Veteran served in the Republic of Vietnam. 

In a May 2011 Notice of Disagreement, the Appellant asserted that the Veteran was on temporary duty in Vietnam and on the perimeter of the base in Thailand and exposed to Agent Orange. 

At the March 2012 DRO hearing, the appellant testified that the Veteran worked on aircraft as an engine mechanic in-service and served in Thailand. She also indicated that the Veteran stated to her, her daughter (B.G), and the representative (while his status was terminal during hospital admission) that he went to Vietnam to pick-up "downed" aircraft to repair the engines, while he was stationed in Thailand. The appellant's representative stated that his own experience from serving in the Air Force for 30 years (5 of which were in Thailand) was that when jet engine mechanics did engine run-ups on aircraft to test the engines it would be on the ends on runways or in remote taxiways. He further speculated that the Veteran would have certainly been in close proximity to foliage that would have been sprayed by an herbicide.

In September 2012, the JSRRC responded to the RO's request for records documenting the Veteran's temporary duty in Vietnam and the Veteran's duties as a jet engine technician at Udorn RTAFB that may have placed him near or on the perimeters of the airbase. The JSRRC researched the Veteran's duty assignment with the 432nd Field Maintenance Squadron, 432nd Tactical Reconnaissance Wing (from November 1971 to January 1972), and were unable to document that the Veteran may have performed duties on jet engines placing him near or on the perimeters of Udorn RTAFB or that he may have been deployed to Vietnam during his tour to recover or repair aircraft engines. 

In January 2016, an archivist at the AFHRA responded to an RO inquiry regarding the Veteran's service. In citing Air Force records, the archivist noted that the 432nd Field Maintenance Squadron's official unit histories, specifically the Propulsion Branch (which the Veteran was assigned to), for the January 1972 through June 1973 period did not contain any record of any jet engine or any propulsion branch personnel being sent on temporary duty to Vietnam. The archivist noted that the investigation was conducted for the period from February 1972 through June 1973 and not through November 1973 because all U.S. Air Force personnel were out of Vietnam as of June 1973. The archivist also noted that Udorn Royal Thai Air Force Base in Thailand never got permission from the Thai government to use herbicides on its perimeter fence and so there is no such record of such use. The archivist further noted that Udorn Royal Air Force Base is the only USAF airbase that never recorded any use of any commercial grade or tactical herbicides in its official unit histories. Based on his review of the available records, the archivist concluded that other installations in Thailand did note the use of herbicides on their bases, but not Udorn. 

In a March 2017 statement, the Appellant asserted that the Veteran was on temporary duty in Vietnam and on the perimeter of the base in Thailand and exposed to Agent Orange. The Appellant stated that the Veteran's duties of performing run-ups, he would have crossed the perimeter of the base at a minimum of two times- arriving and parting assignment there. The Appellant submitted the February 1973 Project CHECO Southeast Asia Report, discussing the location of the runways at Udorn RTAFB in relation to the perimeter of the base along with aerial and ground photographs and a map of Udorn RTAFB showing extensive defoliation along the runways and base perimeter. The excerpt from the report notes that "the perimeter [of the Udorn Airforce Base] was also very close to the aircraft at several points, denying the defenders the necessary 'battle room' to employ the three-defensive-rings technique." The aerial photographs of Udorn RTAFB from the CHECO Southeast Asia Report, Udorn aerial photos, Army FM 2-2 Tactical Reports, Internet Research, May 2010 C & P Service Bulletin, show after defoliation dead grass well inside the perimeter areas along the runway, near work areas and near barracks. The appellant asserted that the Veteran's medals shown on the Veteran's DD- 214, the Vietnam Service Medal and the Republic of Vietnam Campaign Medal, can be associated with Vietnam support duties and the Republic of Vietnam Gallantry Cross with device, which was "awarded only to those who actually set foot inside the borders of Vietnam."

IV. Analysis 

The Appellant contends that the Veteran's terminal lung cancer was caused by his exposure to herbicides while he served on active duty in Vietnam and Thailand. Specifically, she asserts that he was assigned to temporary duty in Vietnam to recover aircraft engines and was on the perimeter of a base in Thailand. 

It is clear that the Veteran died from lung cancer, a disease that may be presumed to be service connected for veterans who were exposed to herbicides. However, in this case, the Veteran is not shown to have served in Vietnam (so as to warrant a presumption that he was exposed to herbicides) or to have served near the perimeter of a Thai airbase (so as to potentially warrant a factual finding of herbicide exposure). 

In this regard, the service personnel records do not mention any service in Vietnam or its waters offshore. Also, the RO made multiple attempts to ascertain whether the Veteran was sent to Vietnam on temporary duty that otherwise was not documented in his service personnel file, but it was unable to locate any such records. The AFHRA archivist reviewed detailed records documenting the activities of the Veteran's squadron, and concluded that the squadron, particularly the Propulsion Branch (which the Veteran was assigned to) did not send any jet engine or any propulsion branch personnel on temporary duty in Vietnam. The AFHRA archivist noted that the investigation was conducted for the period from February 1972 through June 1973 and not through November 1973 because all U.S. Air Force personnel were out of Vietnam as of June 1973. 

Further, the medals the Veteran received do not affirmatively indicate that the Veteran served in Vietnam. Notably, the Vietnam Service Medal, the Republic of Vietnam Campaign Medal, and the Republic of Vietnam Gallantry Cross with device, can be associated with Vietnam support duties and by themselves do not indicate in-country service. Given that the Veteran in fact did serve in a support capacity from an air base located in another country, his receipt of the referenced medals is more consistent with recognition of his duties outside of Vietnam, than with any suggestion he actually visited Vietnam. 

Although the Veteran may have stated to the Appellant, her daughter, and his representative that he went to Vietnam to "pick-up" downed aircraft to repair the engines, while he was stationed in Thailand, there simply is no indication in the Veteran's service records that he visited Vietnam or the waters offshore, or that he otherwise was sent on temporary duty to Vietnam at any point during his service. Also, as noted, the RO made multiple attempts to ascertain whether the Veteran was sent to Vietnam on temporary duty but it was unable to locate any such records. Neither is there any supportive evidence in the Veteran's service record to confirm herbicide exposure alleged to have occurred on temporary assignment in Vietnam. To the contrary, the Veteran's personnel record includes personnel evaluations from May 1964 to October 1974, which attest to his high level of work performance and provides detailed descriptions of duties performed during the evaluation period. It is reasonable to assume that if the Veteran had been assigned temporary duties to Vietnam it would have been noted in these commendations. 

Considering all this information together, the Board affords greater probative value to the Veteran's official personnel records than to his recollections of events occurring decades before, as relayed by the appellant and others. Consequently, the Board finds that the Veteran did not at any point in service serve in or visit the Republic of Vietnam. 

Regarding the potential herbicide exposure in Thailand, the weight of the probative evidence indicates that the perimeter of Udorn was not sprayed with tactical or commercial herbicides. The Board points out that the appellant and her representative are not in a position to provide competent information concerning whether herbicides were used at the Udorn facility. In January 2016, the AFHRA archivist reported that there was no indication that Udorn Royal Thai Air Force Base ever got permission from the Thai government to use herbicides on its perimeter area and there is no record of such use. The archivist further noted that Udorn Royal Air Force Base was the only USAF airbase that never recorded any use of any commercial grade or tactical herbicides in its official unit histories. The archivist specifically looked into the use of tactical and commercial herbicide at Udorn Airforce Base so this finding presents strong evidence that commercial or tactical herbicide were not used on the base. 

Notably, the CHECO report does generally indicate that there was a significant use of herbicides on the fenced-in perimeters of military bases in Thailand to remove foliage that provided cover for enemy forces. However, it does not contain a specific finding that tactical or commercial herbicides were used on the perimeter of Udorn. The appellant also submitted photographs that appear to show dead or browning grass well inside the perimeter areas along the runway, near work areas and near barracks of Udorn Airforce Base. However, there is no indication from the photographs that the condition of the area was the result of the spraying of any tactical or commercial herbicide agent. The appellant's representative asserted that the Veteran would have certainly been in close proximity to foliage that would have been sprayed by an herbicide. However, this assertion lacks any significant probative value due its speculative nature (i.e. although the representative did indicate that he served in Thailand, he did not report that he served at Udorn AFB or was otherwise aware that spraying of tactical or commercial herbicides actually occurred there). 

In any event, the Board finds that the rather specific findings of the archivist are of greater probative value than the general information from the CHECO report. Accordingly, the Board finds that the Veteran was not exposed to herbicides during his service in Thailand. 

In sum, the preponderance of the evidence shows that the Veteran did not serve or visit Vietnam, or that he was exposed to any herbicide agent while stationed at Udorn Airbase. Consequently, there is no basis for granting service connection for the cause of death based on the Veteran having died from lung cancer, a disease presumed to be related to in-service herbicide exposure. 

The Board notes that the appellant does not contend that the Veteran's lung cancer originated in service. Given that the service treatment records are silent for any reference to lung cancer, that the first post-service evidence of lung cancer in 2010 (decades after service), and that there is otherwise no evidence suggesting a link between the lung cancer and service (other than through the theory of herbicide exposure), the Board finds that the preponderance of the evidence is against the claim of service connection for the Veteran's cause of death.

Consequently, the Board finds that service connection for the cause of the Veteran's death is denied. The benefit of the doubt doctrine is not applicable, and the claim must be denied. 38 U.S.C.A. § 5107(b).





 (CONTINUED ON NEXT PAGE)

ORDER

Service connection for the cause of the Veteran's death is denied. 




____________________________________________
THOMAS H. O'SHAY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs